**ENTERED**

JUL 17 2009

**K.R.W.**

FILED

at _____ O'clock & _____ min. _____ M

JUL 17 2009

United States Bankruptcy Court
Columbia, South Carolina (26)

# UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF SOUTH CAROLINA

IN RE:

Louis Bryan Kirkman and Donna H. Kirkman,

Debtor(s).

C/A No. 09-03214-JW

Chapter 13

**ORDER**

This matter comes before the Court for a hearing to consider confirmation of Louis Bryan Kirkman and Donna H. Kirkman's ("Debtors") Chapter 13 plan. Toyota Motor Credit Corporation ("TMCC") objects to confirmation on grounds that Debtors' Chapter 13 plan impermissibly values its purchase money security interest in a 2006 Lexus LS430. This Court has jurisdiction pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (L), and (O). Pursuant to Fed. R. Civ. P. 52, made applicable to this proceeding by Fed. R. Bankr. P. 7052, the Court makes the following Findings of Fact and Conclusions of Law.[1]

## FINDINGS OF FACT

1.      On October 19, 2005, Debtors entered into a Closed End Motor Vehicle Lease Agreement[2] ("Lease Agreement") with Jim Hudson Luxury Cars, Inc. ("Jim Hudson") for the lease of a 2006 Lexus LS430 ("Lexus"). The Lease Agreement provided for Debtors to make monthly payments of $1,251.94, totaling $60,093.12, from October 19, 2005, until the end of the lease term on October 18, 2009. The gross

---

[1]      To the extent any of the following Findings of Fact constitute Conclusions of Law, they are adopted as such, and to the extent any Conclusions of Law constitute Findings of Fact, they are adopted as such.

[2]      A "closed end lease agreement" is a rental agreement that puts no obligation on the lessee to purchase the leased asset at the end of the agreement, and thus, the lessee does not bear the risk of greater depreciation than the projected depreciation figure used to calculate the lease's payment.

capitalized cost[3] of the vehicle was $67,065.00. By the end of the Lease Agreement's term, Debtors would have paid $61,211.12. The residual value of the Lexus at the end of the Lease Agreement's term was projected to be $28,837.95. The Lease Agreement provided that "you have no ownership interest in the Vehicle unless and until you exercise your option to purchase set forth in this Lease." On the same day, the Lease Agreement was assigned to Lexus Financial Services ("Lexus Financial"), a division of TMCC.

2.   On October 19, 2005, an Affidavit and Notification of Sale of the Lexus ("Affidavit of Sale") was executed. The Affidavit of Sale exhibited the sale of the Lexus from Jim Hudson to Lexus Financial care of Debtors and indicated Lexus Financial as the only lienholder.

3.   On September 10, 2008, with one year and two months remaining under the Lease Agreement's term and within 910 days of the petition commencing this bankruptcy case, Debtors executed a retail installment contract with Jim Hudson ("Retail Installment Contract") to purchase the Lexus. The Retail Installment Contract provided for fifty-nine (59) monthly payments of $927.20 and one (1) final payment of $927.20, which totaled $45,611.52: comprised of the cash price of the Lexus, $43,742.52;[4] Jim Hudson's closing fee, $289.00; and mechanical breakdown protection, $1,580.00.[5] The Retail Installment Contract included an itemization of the amount financed, which

---

[3]   Lexus Financial Services defines "Gross Capitalized Cost" as the "agreed upon value of the lease vehicle (including dealer mark-up), plus any items you pay for over the lease term such as taxes, service contracts, credit insurance and any prior credit or lease balance."
[4]   An analysis of the scheduled depreciation in the Lease Agreement demonstrates the purchase price of the Lexus in the Retail Installment Contract was not based on the depreciation scheduled in the Lease Agreement.
[5]   The Court in In re Macon, C/A No. 07-03041-HB, slip op. (Bankr. D.S.C. Oct. 19, 2007) found the inclusion of a service contract, gap insurance, and an administrative fee in the price of a car constituted part of the "price" in a purchase money obligation.

2

provided a notation for the payoff of the existing lien or lease balance on a trade-in vehicle. However, this component of the financed price was noted as inapplicable to this transaction, indicating Jim Hudson, not TMCC, had paid off the lease balance. Although no affidavit of sale returning title to Jim Hudson was introduced, the Retail Installment Contract signed by Debtors indicated Jim Hudson as the seller. The Retail Installment Contract conveyed a security interest in the Lexus to Jim Hudson to secure repayment of the amount financed by Debtors. On the same day, the Retail Installment Contract was assigned by Jim Hudson to TMCC.

4.     Louis Kirkman received a letter, dated September 19, 2008, from Lexus Financial. The letter thanked him for "purchasing your leased vehicle through Lexus Financial Services." The letter went on to inform him that his "lease account is now paid in full" and the "title for your vehicle has been sent to the dealership that paid off your vehicle."

5.     On October 2, 2008, the South Carolina Department of Motor Vehicles issued the Lexus's certificate of title to Debtors. The certificate of title indicated TMCC as the first lienholder and the acquisition date of the lien as September 10, 2008. Thus, TMCC perfected its security interest in the Lexus by having its security interest reflected on the Lexus's certificate of title.

6.     Debtors filed a joint petition for Chapter 13 relief on April 29, 2009.

7.     On May 14, 2009, Debtors filed their Chapter 13 plan ("Plan"). The Plan proposes bifurcating TMCC's security interest in the Lexus by paying TMCC $29,950.00 as a secured claim and $15,156.86 as an unsecured claim.

8.      TMCC filed a proof of claim on June 5, 2009. In the proof of claim, TMCC asserts that it holds a secured debt totaling $45,106.86 as of the date of the petition. To substantiate its claim, TMCC also filed the Retail Installment Contract, the Lexus's Certificate of Title, TMCC's loan summary sheet for the Lexus, and a summary of NADA values for a comparable Lexus.

9.      TMCC filed a timely objection to confirmation of Debtors' Plan. TMCC asserts that the hanging paragraph of 11 U.S.C. § 1325(a)[6] prohibits Debtors from valuing its security interest because the security interest is purchase money and the debt was incurred within 910 days of the petition date.

10.     Debtor argues that the Retail Installment Contract was a refinancing of the Lease Agreement; the Court should utilize its equitable powers to construe the Retail Installment Contract as outside the reach of the hanging paragraph to fulfill Congress's intent in enacting the hanging paragraph, which was to reach new vehicle sales; and the refinancing of the remainder of the Lease Agreement is not a cost of acquiring the Lexus, and therefore, under the transformation rule, this refinancing transforms TMCC's security interest to non-purchase money.

### ISSUE

Whether TMCC holds a purchase money security interest that is protected from valuation in Debtors' plan under the hanging paragraph of § 1325(a)?

### CONCLUSIONS OF LAW

According to the language of the statute, it appears that the hanging paragraph of § 1325(a) is meant to protect secured car lenders which meet its requirements and not exclusively those secured car lenders financing new vehicles. Cf. In re Price, 562 F.3d

---

[6]      Further references to the Bankruptcy Code shall be made by section number only.

618, 628 (4th Cir. 2009)(stating that Congress included the hanging paragraph "[b]ecause secured lenders would generally fare worse under Chapter 13 than under Chapter 7 [; and therefore,] Congress sought to compensate them with specific provisions such as protection from bifurcation under the hanging paragraph"); GMAC v. Horne, 390 B.R. 191 (E.D. Va. 2008)(quoting GMAC v. Peaslee, 373 B.R. 252, 261 (W.D.N.Y. 2007) ("The 'hanging paragraph' itself ... clearly indicate[s] the intent was to protect creditors from perceived abuses by spendthrift debtors prior to petitioning for Chapter 13 relief.... [T]he so-called 'hanging paragraph' of § 1325, was obviously intended to protect the interests of automobile dealers who provide financing for customers.")).  Therefore, the Court may not utilize its equitable powers to confirm Debtors' plan as long as TMCC meets the requirements of the statute.

Whether TMCC's security interest is a purchase money security interest is a matter of state law. In re Price, 562 F.3d 618, 623-24 (4th Cir. 2009); see also In re Matthews, 378 B.R. 481, 486 (Bankr. D.S.C. 2007)(citing Rosen v. Assoc. Fin. Servs. Co., 18 B.R. 723, 724 (Bankr. D.S.C. 1981), aff'd 17 B.R. 436 (D.S.C. 1982)). South Carolina adopted the revised version of Article 9 in 2001, which is codified as S.C. Code § 36-9-101 et seq. ("U.C.C."). South Carolina Code § 36-9-103(b)(1) provides that "[a] security interest in goods is a purchase-money security interest (1) to the extent that the goods are purchase money collateral with respect to that security interest." Purchase money collateral means goods that secure "a purchase-money obligation incurred with respect to that collateral." S.C. Code § 36-9-103(a)(1). A purchase money obligation is "an obligation of an obligor incurred as all or part of the price of the collateral or for value given to enable the debtor to acquire rights in or the use of the collateral if the value

is in fact so used." S.C. Code § 36-9-103(a)(2). The term "goods" in the U.C.C. includes vehicles. See S.C. Code § 36-9-102(44); see also In re Matthews, 378 B.R. at 486. Therefore, a "security interest is purchase money if a debtor incurs debt to obtain certain goods and the creditor lends money to the debtor to enable the debtor to obtain those goods." In re Matthews, 378 B.R. at 486.

Under the facts of this case it appears that TMCC's security interest is a purchase money security interest.[7] Debtors first entered into the Lease Agreement with Jim Hudson. The Lease Agreement was subsequently assigned to Lexus Financial and title was transferred to Lexus Financial. The Lease Agreement specifically provided that Debtors had "no ownership interest in the Vehicle unless and until you exercise your option to purchase set forth in this Lease." Before the end of the lease, Debtors purchased the Lexus. It is unrefuted that Jim Hudson paid off the remaining term of the lease and that Lexus Financial Services conveyed the Lexus's title to Jim Hudson. Thereafter, Jim Hudson and Debtors entered into the Retail Installment Contract, whereby Debtors purchased the Lexus through financing provided by TMCC. This purchase, transformed the Lexus into "purchase money collateral," as it is a "good" which secures a "purchase money obligation."[8] The financing debt secured by the security interest in the Lexus that Debtors granted to TMCC was a "purchase money obligation" because Debtors' contractual obligations to TMCC were for value given by TMCC to enable Debtors to

---

[7]    See S.C. Code § 36-9-103(b)(1). The Court finds guidance in determining the hanging paragraph's application to these facts in In re Price, 562 F.3d at 630, n.6. In Price, the Fourth Circuit first applied state law to determine if the transaction constituted a purchase money security interest and then applied federal law to determine whether the hanging paragraph applied to the transaction. The hanging paragraph, by its own terms, is only applicable in instances where the entire debt is a purchase money security interest under state law.
[8]    See S.C. Code § 36-9-103(a)(1).

acquire rights in the vehicle, and it is undisputed that the value was in fact so used for that purpose.[9]

Debtors contend the Retail Installment Contract is a refinancing of the Lease Agreement. However, this Court has distinguished the refinancing of an antecedent debt "from those circumstances where the proceeds of a new loan are clearly used to acquire the collateral." In re Connelly, C/A No. 08-01715-JW, slip op. at 3 (Bankr. D.S.C. June 25, 2008).

In both Connelly and Rosen v. Assoc. Fin. Servs. Co., 18 B.R. 723, 725 (Bankr. D.S.C. 1981), aff'd 17 B.R. 436 (D.S.C. 1982), the Court found that the original transaction was a purchase money security interest; however, the subsequent refinancing of the antecedent debt of the original transaction by the original lender destroyed the purchase money nature of the original transaction. See Connelly, slip op. at 6.

In Connelly, within 910 days of the filing of the petition, Atlantic Community Bank ("Atlantic") loaned money to enable the debtors to acquire their vehicle, and in exchange for the loan, Atlantic acquired and perfected a purchase money security interest in the debtors' vehicle. Approximately one year later, the debtors refinanced this antecedent debt by signing a new promissory note and security agreement with Atlantic, which changed the loan and payment amount, the amount of any late fee, and the annual percentage rate. Id. at 1-2. The Court emphasized that a new security agreement was signed with a new promissory note, and therefore, the new promissory note was not a continuation of the existing agreement. Id. at 5. The Court noted that although many

---

[9]    See S.C. Code § 36-9-103(a)(2). The ownership rights that Debtors acquired subsequent to executing the Retail Installment Contract are demonstrated by the South Carolina Certificate of Title indicating the Debtors as the owners of the Lexus. See S.C. Code § 56-19-320 (providing that "[a] certificate of title issued by the Department of Motor Vehicles is prima facie evidence of the facts appearing on it").

terms of the new promissory note were the same as those in the original transaction, the new promissory note was "intended to extinguish the existing debt and control the parties' relationship" and did not extend credit, which enabled debtors to acquire rights in the vehicle. Id. at 5-6. Therefore, the Court held the second loan was non-purchase money and the original loan lost its purchase money characterization. Id. at 6.

In Rosen, the debtor purchased household appliances in which the creditor, Associates Financial Services ("Associates"), held a valid purchase money security interest. Shortly after the first loan was made, Associates made a second loan, which was secured by the same appliances. The proceeds of the second loan were used to pay off the first loan in total and to make premium payments on various insurance policies. Rosen, 18 B.R. at 723-24. The Court held that the purchase money nature of the original transaction was extinguished when the proceeds of the second note were used to pay off the original note, which was an antecedent debt. Id. at 725.

The facts in this case are distinguishable from those of Connelly and Rosen. Even though the Kirkmans had use and possession of the Lexus under a lease, their financial obligation was to Lexus Financial and the title to the Lexus was in name of Lexus Financial.[10] The antecedent debt was not a purchase money security interest because it was a Closed End Lease Agreement.[11] Under South Carolina law, a true lease does not create a security interest. See S.C. Code § 36-1-201(37). It is undisputed that the Debtors altered that transaction by purchasing the Lexus from a distinct legal entity, Jim Hudson,

---

[10]     There was no argument that the lease was in fact a disguised security interest. South Carolina law provides criteria for ascertaining whether a transaction in the form of a lease creates a security interest in substance. See S.C. Code § 36-1-201(37).

[11]     No exception to the parol evidence rule was indentified to allow this Court to vary the terms of the documents. See McGill v. Moore, 672 S.E.2d 571, 576 (S.C. 2009)(citations omitted)("The parol evidence rule prevents the introduction of extrinsic evidence of agreements or understandings contemporaneous with or prior to execution of a written instrument when the extrinsic evidence is to be used to contradict, vary, or explain the written instrument.").

who apparently reacquired title from Lexus Financial and then transferred title to Debtors. Unlike the facts presented in <u>Connelly</u> and <u>Rosen</u>, the Debtors did not refinance a debt with the original lender.

For these reasons, the Court concludes that TMCC's security interest is a purchase money security interest and that the hanging paragraph of § 1325 thus prohibits valuation of its security interest in the Lexus.

In addition, in a confirmation hearing, a debtor bears the burden of proving that his Plan complies with § 1325(a) by a preponderance of the evidence, <u>In re Barnes</u>, 378 B.R. 774, 777 (Bankr. D.S.C. 2007); <u>see</u> <u>also</u> <u>In re Namie</u>, 395 B.R. 594, 596 (Bankr. D.S.C. 2008). Debtors in this case did not meet their burden.

## CONCLUSION

Based upon the foregoing, Toyota Motor Credit Corporation's objection to confirmation is sustained and confirmation of the plan as presently filed is denied. Debtors are given ten (10) days from the date of the entry of this Order within which to propose and file an amended plan

**AND IT IS SO ORDERED.**

UNITED STATES BANKRUPTCY JUDGE

Columbia, South Carolina
July 17, 2009

9